**Eric C. JACOBSON, Esq., Plaintiff,**

v.

**Arnold SCHWARZENEGGER, et al., Defendants.**

**No. CIV.CV043629–JFW(MC).**

United States District Court, C.D. California.

Nov. 30, 2004.

---

**7.** The only remaining issue for determination by the court is the plaintiffs' claim of misrepresentation/concealment.

Plaintiff Eric C. Jacobson—in pro per.

Defendants: Christina Bull Arndt, John Rittmayer & Brian Dwight Vaughan, Deputy Attorneys General, Office of the California Attorney General, Los Angeles.

MEMORANDUM AND ORDER: 1. GRANTING MOTION TO DISMISS; 2. DENYING MOTION TO STRIKE AND MOTION FOR MORE DEFINITE STATEMENT AS MOOT; AND 3. DISMISSING COMPLAINT WITH LEAVE TO AMEND

McMAHON, United States Magistrate Judge.

### BACKGROUND

The *pro se* plaintiff, a licensed attorney, filed a ninety-seven page civil rights complaint on May 21, 2004. This action ap-pears to have been precipitated by the removal of the plaintiff from an "attorney appointment list" maintained by the California Board of Prison Terms ("BPT") from which attorneys are appointed to represent parolees in parole revocation proceedings. However, the plaintiff not only brings claims for relief based upon alleged injuries suffered by the plaintiff, but also purports to bring this action on behalf of a "caste" of some 125,000 California parolees. The plaintiff does not style this case as a class action, but rather invokes the doctrine of third-party standing to assert claims on behalf of present and future parolees. The plaintiff indicates that "representative parolee plaintiffs" will be joined as plaintiffs once they have exhausted their administrative remedies.[1]

The defendants are: (1) California Governor Arnold Schwarzenegger; (2) former California Governor Gray Davis; (3) California Youth and Adult Correctional Agency Secretary Roderick Hickman; (4) former California Youth and Adult Correctional Agency Secretary Robert Presley; (5) BPT Chairperson Margarita E. Perez; (6) former BPT Chairperson Carol Daly; (7) BPT Associate Chief Deputy Commissioner Thomas Wadkins; (8) BPT Chief Counsel Terry R. Farmer; (9) BPT Executive Director Marvin E. Speed, II; (10) BPT Chief Deputy Commissioner Ken Cater; (10) BPT official Sandra Maciel; (11) BPT official Tracy Master; (12) BPT official Marc D. Remis; (13) BPT Counsel Dan Moeller; (14) California Department of Corrections ("CDC") Director Jeanne S. Woodford; (15) former CDC Director Edward S. Alameida, Jr.; (16) parole agent Brigit Murria; and (16) ten fictitious "Doe" defendants.

On August 6, 2004, defendants Schwarzenegger, Davis, Perez, Daly, Wadkins, Farmer, Speed, Cater, Maciel, Master,

---

1. No such "representative parolee plaintiff" has sought joinder at this point.

Remis, Moeller, Woodford, Alameida, Murria and Hickman ("defendants") filed: (1) a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure; and (3) a motion to strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. On October 13, 2004, the plaintiff filed an opposition to the motion to dismiss and motion to strike. Also on October 13, 2004, the plaintiff filed a response to the motion for a more definite statement with respect to the plaintiff's claims for defamation and invasion of privacy. On October 19, 2004, the defendants filed a reply. On October 25, 2004, the plaintiff filed "Plaintiff's Exhibit Concerning the Status of Potential Representative Parolee Plaintiff Eric Johnson."

### SUMMARY OF PLAINTIFF'S ALLEGATIONS

The plaintiff, an active member of the California state bar, allegedly was employed by the BPT between September 1998 and September 2003 as an attorney representing parolees at parole hearings (Complaint, pp. 4–5, ¶ 4(a)). The plaintiff alleges that the defendants, in disregard of California state law calling for the provision of rehabilitative services to parolees, have operated a "parole revocation mill," whereby approximately 70% of parolees suffer parole revocation and a return to custody for up to twelve months, without due process or effective assistance of counsel (Complaint, pp. 14–15, ¶¶ 27–29). This so-called "mill" allegedly benefits state corrections officials and private contractors, but leaves parolees unprepared to live productive lives (Complaint, pp. 16–17, ¶¶ 31–32). The defendants and various labor organizations, including the prison guards' union, allegedly "ensure an endless supply of 'customers' for California's burgeoning prison-industrial complex," alleg-

edly by corrupting the legislature and by exerting "virtually totalitarian control over prison administration" (Complaint, pp. 17–18, ¶ 33). The alleged results of this massive conspiracy are, among other things, overcrowded prisons, a "broken" parole system, and the oppressive treatment of African–American parolees (Complaint, pp. 21–24, ¶¶ 35–40).

According to the plaintiff, parole proceedings allegedly result in reincarceration "like clockwork" (Complaint, p. 32, ¶ 52). The BPT allegedly fails to appoint counsel for "thousands of indigent parolees" (Complaint, p. 33, ¶ 55). The lawyers whom the BPT does appoint are allegedly incompetent individuals who fail to investigate or prepare for parole revocation hearings (Complaint, p. 32, ¶ 53). The BPT allegedly provides "paltry" remuneration for appointed attorneys, fails to provide appointed counsel with investigative or appellate resources, refuses to allow parolees to consult with counsel before the hearing, and schedules each Deputy Commissioner to conduct four to six hearings per day, resulting in hearings which are "cursory" and "summary" (Complaint, pp. 33–34, ¶ 55). The BPT allegedly conducts hearings in inappropriate locations in jails and prisons, so that parolees must appear in jail or prison attire, shackled, and ungroomed (Complaint, p. 34, ¶ 55(e)). Allegedly biased and unqualified hearing officers predetermine the outcome, conduct summary hearings, and exhibit contempt for the parolee and the parolee's witnesses (Complaint, pp. 34–35, ¶ 55(f); pp. 37–38, ¶ 59; p. 38, ¶ 62). The BPT allegedly allows the unlawful use of hearsay evidence in violation of *United States v. Comito*, 177 F.3d 1166 (9th Cir.1999) (Complaint, pp. 35–37, ¶ 58).

These conditions allegedly violate the parolees' Eighth Amendment rights to be free from cruel and unusual punishment,

their Fourteenth Amendment rights to a hearing before an impartial decision-maker, their rights to counsel, and their rights to be free from slavery or involuntary servitude under the Thirteenth Amendment (Complaint, pp. 39–41, ¶¶ 65). The BPT also allegedly violates parolees' rights to timely review of the propriety of a parole hold, to the presumption of innocence, to individualized consideration and deliberation, and "to be free from enslavement except upon having been duly convicted of a crime" (Complaint, p. 40, ¶ 66).

The plaintiff, who allegedly represented parolees competently and zealously for five years, began to complain about these problems to BPT personnel in or about 2001 (Complaint, pp. 40–43, ¶¶ 67–71). The plaintiff also filed several appeals with the "BPT appeals unit" in which the plaintiff complained of "atrocious conduct by BPT problem Deputy Commissioners" (Complaint, pp. 43–44, ¶ 72). Allegedly in retaliation for this conduct on the plaintiff's part, unidentified "BPT personnel" removed the plaintiff from the "attorney appointment list" on September 16, 2003, without good cause or any valid reason (Complaint, p. 44, ¶ 73). Unidentified "personnel" also allegedly conducted a spurious and non-private investigation of the plaintiff, defamed the plaintiff, and harassed the plaintiff even after "partially clearing" the plaintiff of any wrongdoing (Complaint, p. 45, ¶ 74). "Defendant personnel" thereby allegedly violated the plaintiff's rights to liberty, property, procedural and substantive due process, and equal protection guaranteed by the federal and state constitutions (Complaint, p.

45, ¶ 75). BPT personnel also violated the plaintiff's rights under the California Labor Code and the California Fair Employment and Housing Act ("FEHA"), defamed the plaintiff, and invaded the plaintiff's privacy (Complaint, pp. 45–46, ¶ 75).

The complaint contains nine claims for relief, styled "causes of action." The plaintiff purports to bring the first and second causes of action on behalf of California parolees, for violations of the federal and state constitutions[2] respectively. The third and fourth causes of action allege the plaintiff's personal claims for violations of the federal and state constitutions. The remaining state law claims, which the plaintiff asserts in his own right, are for violation of a California Labor Code provision prohibiting "retaliatory employment discrimination" (fifth cause of action), defamation (sixth cause of action), invasion of privacy (seventh cause of action), age discrimination and harassment in violation of the FEHA (eighth cause of action), and intentional infliction of emotional distress (ninth cause of action).

### SUMMARY OF DEFENDANTS' CONTENTIONS

The defendants seek dismissal on the following grounds:

1. The complaint violates Rule 8 of the Federal Rules of Civil Procedure;

2. The court lacks subject matter jurisdiction over the first and second causes of action because the plaintiff allegedly lacks standing to assert the rights of third-party parolees to injunctive relief;

**2.** *But see Degrassi v. Cook,* 29 Cal.4th 333, 335, 127 Cal.Rptr.2d 508, 509, 58 P.3d 360 (2002) (no private right of action for damages for violation of free speech clause of California Constitution); *Katzberg v. Regents of Univ. of Calif.,* 29 Cal.4th 300, 329, 127 Cal.Rptr.2d 482, 505, 58 P.3d 339, 358 (2002) (no private right of action for damages for violation of

due process clause of California Constitution); *Javor v. Taggart,* 98 Cal.App.4th 795, 120 Cal. Rptr.2d 174 (2002) ("[i]t is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution"; citations).

3. The third cause of action fails to state a claim pursuant to 42 U.S.C. section 1983 against defendants Schwarzenegger, Davis, Hickman, Presley, Perez, Daly, Farmer, Cater, Maciel, Master, Remis, Moeller, Woodford and Alameida because the plaintiff fails to allege the personal involvement of these defendants in any unlawful activity;

4. The fifth and sixth causes of action are insufficient because the plaintiff was not an employee of the BPT, but rather was an independent contractor;

5. The fifth cause of action fails to plead a claim for violation of California Labor Code section 1102.5 because the defendants are immune from suit;[3]

6. The sixth cause of action is insufficient because: (a) the plaintiff failed to plead the allegedly defamatory statement; (2) the plaintiff fails to plead the making of an unprivileged defamatory statement; and (3) the allegation of malice is conclusory; and

7. The eighth cause of action fails to state a claim for age discrimination or harassment in violation of the FEHA because: (a) the plaintiff has failed to plead an essential element of a prima facie case; and (b) the alleged conduct is actionable only as discrimination, not harassment.

The defendants seek a more definite statement of the plaintiff's invasion of privacy claim contained in the seventh cause of action. In their companion motion to strike, the plaintiff seek an order striking certain identified portions of the complaint on the ground that those allegations are irrelevant, immaterial, impertinent and prejudicial.[4]

## DISCUSSION

### I. Governing Standards

In ruling on a motion to dismiss, the court must take as true all factual allegations in the complaint, and must construe the complaint in the light most favorable to the plaintiff. See *Yamaguchi v. Dep't of the Air Force*, 109 F.3d 1475, 1481 (9th Cir.1997); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir.1994); Fed.R.Civ.P. 12(b)(6). However, the court need not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003) (citation and footnotes omitted), *pet. for cert. filed*, 73 U.S.L.W. 3216, ―― U.S. ――, 125 S.Ct. 865, 160 L.Ed.2d 770 (2005).

In ruling on the sufficiency of a complaint, the court may consider exhibits attached to the complaint and matters properly the subject of judicial notice. See *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989). The court otherwise may not consider matters outside the complaint. See *Arpin v. Santa Clara Valley Transportation Agency*, 261 F.3d 912, 925 (9th Cir.2001) (citation omitted). Thus, in determining the sufficiency of the complaint, the court may not consider the new allegations and exhibits contained in the plaintiff's opposition. However, the court may consider allegations in the plaintiff's opposition in deciding whether to grant leave to amend. See *Broam v. Bogan*, 320 F.3d 1023, 1026 n. 2 (9th Cir.2003).

---

3. In their Reply, the defendants withdraw the argument contained in section III.B of their Memorandum of Points and Authorities. See *Gardenhire v. Housing Authority*, 85 Cal. App.4th 236, 242, 101 Cal.Rptr.2d 893, 897 (2000) (public employee's report of alleged wrongdoing to her public entity employer entitled her to the protections of Labor Code section 1102.5).

4. For the reasons discussed herein, the court denies the motion for a more definite statement and the motion to strike as moot.

## II. The Complaint Fails to Comply With the Requirements of Rule 8 of the Federal Rules of Civil Procedure.

The defendants contend that the complaint fails to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure because it fails to identify any specific acts of wrongdoing by the individual defendants. Additionally, in their Rule 12(f) motion to strike, the defendants seek an order striking the plaintiff's various allegations which contain, among other things, legal argument, historical narrative, and excerpts from newspaper articles, web sites, and the Little Hoover Commission Report, on the grounds that these allegations are redundant, spurious and irrelevant. These concerns are relevant to a Rule 8 analysis as well as to a Rule 12(f) analysis.

■ Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain" statement of the claim for relief. "Each averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(e). A complaint also must contain a demand for relief. Fed.R.Civ.P. 8(a). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Bautista v. Los Angeles County*, 216 F.3d 837, 841 (9th Cir.2000) (citations and quotations omitted). A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir.1996).

■ In *McHenry v. Renne*, the Ninth Circuit affirmed a district court's dismissal of a complaint consisting of a "rambling" narrative containing "immaterial background information," and "storytelling or political griping," in which each claim for relief incorporated 122 paragraphs of confused factual allegations and then made " 'perfunctory reference to a legal claim said to arise from these undifferentiated facts' ". *Id.* at 1176–77. The plaintiff's complaint is similarly defective. The complaint contains page after page of descriptive and often hyberbolic narrative, quotations from articles, descriptions of interviews and legal argument, and a lengthy digression on the California governor's purported relationship with the prison guard's union. The complaint does not comport with Rule 8's requirement that the pleading be "short and plain." Like the complaint in *McHenry v. Renne*, much of the complaint "reads like a magazine story instead of a traditional complaint." *Id.* at 1176; *see also Lippitt v. Raymond James Financial Serv., Inc.*, 340 F.3d 1033, 1036, 1040 (9th Cir.2003) (complaint containing passages from newspaper article and New York Stock Exchange disciplinary decision to show defendants' allegedly deceptive practices in other cases "scrupulously avoided any pretense of complying with F.R.Civ.P. 8," and demonstrated a "kind of garrulity in pleading [which] is flagrantly inconsistent with Rule 8").

Accordingly, the defendants' motion to dismiss the complaint for failure to make a short and plain statement of the plaintiff's claim is granted. Rule 8(a), Federal Rules of Civil Procedure.

## III. The Plaintiff Lacks Standing to Assert Claims Which Are the Subject Matter of a Pending Parolee Class Action.

### A. Summary of Plaintiff's Purported Third–Party Standing Claims.

As indicated above, plaintiff purports to bring the first and second causes of action seeking injunctive and declaratory relief on behalf of California parolees and

future parolees pursuant to the doctrine of third-party standing (see Complaint, p. 5, ¶ 5).[5] The plaintiff purports to sue on behalf of prospective "representative parolee clients," not yet joined as parties, who allegedly are "real parties in interest to the outcome of [the plaintiff's] personal claims against defendant corrections' personnel" (see Complaint, pp. 5–6, ¶ 6). These "representative parolee clients" allegedly comprise a "caste" of approximately 125,000 California parolees (see Complaint, pp. 13–14, ¶ 26). The plaintiff defines the representative parolees as those persons "who are at risk of parole revocation or currently charged with—and incarcerated for *inter alia,* violating their parole and are awaiting processing administered by defendant personnel" (Complaint, pp. 5–6, ¶ 6). The plaintiff identifies one such potential representative parolee plaintiff as Eric Johnson, allegedly recently the subject of an arrest for violating parole (Complaint, p. 6, ¶ 7). The plaintiff does not join Johnson as a party.[6]

On behalf of California parolees, the plaintiff challenges many aspects of the BPT's parole revocation procedures, claiming that the BPT denies parolees their alleged right to counsel, provides ineffective and corrupt counsel to indigent employees, refuses to provide resources to attorneys appointed to represent parolees in revocation hearings or administrative appeals, misapplies the law in revocation hearings, conducts hearings in a cursory and summary manner and in inappropriate locations, and provides unqualified and bi-ased hearing officers who predetermine the outcome and denigrate the parolees appearing before them (see Complaint, pp. 31–38, ¶¶ 50–62). The plaintiff also asserts, on behalf of California parolees, that the BPT denies parolees their rights to timely review of the propriety of a parole hold, a timely revocation hearing, the presumption of innocence, individualized consideration, and to be free from enslavement (Complaint, p. 40, ¶ 66).

According to the plaintiff, the "representative parolee plaintiff" and "all parolees similarly situated" have no means of vindicating their constitutional rights with respect to the BPT's parole revocation procedures (see Complaint, pp. 52–55, ¶ 92). The plaintiff alleges that "numerous practical impediments to parolees being heard in court, including the non-provision of resources to appointed attorneys to bring writs, appeals or impact litigation, and the inability of 99.9[%] of parolees to afford to retain private counsel to so challenge the corrupt, illicit and unlawful machinations of Defendant personnel against them, make it appropriate ... for [the plaintiff] to be accorded third-party standing to defend his past and future parolee clients' rights via the third-party standing doctrine" (Complaint, pp. 51–52, ¶ 89).

On behalf of all parolees, the plaintiff and the potential "representative parolee plaintiff" seek relief in the form of: (1) a declaratory judgment declaring unconstitutional "all of the California state laws, regulations, customs, usages, patterns or practices facilitating, aiding and abetting Defendant personnel's conduct"; (2) an or-

---

**5.** The second cause of action incorporates and replicates the allegations of the first cause of action (Complaint, pp. 61–63, ¶¶ 97–103).

**6.** In his "Plaintiff's Exhibit Concerning the Status of Potential Representative Parolee Plaintiff Eric Johnson," filed on October 25, 2004, the plaintiff provides a copy of a letter he sent to counsel for the defendants on Octo-ber 22, 2004, in which the plaintiff advised counsel that, on or about June 1, 2004, Eric Johnson pled guilty to a drug possession offense and is now serving a determinate sentence which will conclude on or about February, 2005, at which time Johnson allegedly will be released for a new parole term of three years.

der mandating that all indigent parolees accusing of violating parole receive a competent appointed attorney; (3) an order establishing an hourly wage and other working conditions for appointed attorneys; (4) an order increasing the time allotted for revocation hearings and regulating the location thereof; (5) an order requiring that revocation hearings be conducted by qualified and neutral hearing officers; (6) an order directing the BPT to relinquish control of the attorney appointment list to an independent third party and regulating the BPT's ability to remove an attorney from the list; and (7) an order for continuing supervision by the court or a special master (Complaint, pp. 56–60, ¶ 95).

## B. *Valdivia v. Schwarzenegger*

■ The complaint wholly fails to mention the parolee class action presently pending in the United States District Court for the Eastern District of California, *Valdivia v. Schwarzenegger*, CV S–94–0671 LKK/GGH ("*Valdivia*"). The court takes judicial notice of the docket and records in that case. *See Mir v. Little Company of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir.1988) (court may take judicial notice of court records); *Quintana v. Gates*, 2004 WL 1661540 at *2 n. 1 (C.D.Cal.2004) (taking judicial notice of court docket).[7]

The *Valdivia* class action was filed on May 2, 1994, and was assigned to Chief Judge Emeritus Lawrence K. Karlton. On December 1, 1994, the court certified a class under Rule 23(b) of the Federal Rules of Civil Procedure consisting of: (1) California parolees who are at large; (2) California parolees in custody as alleged parole violators, and who are awaiting revocation of their state parolee and (3) California parolees who are in custody, having

been found in violation of parole and who have thereupon been sentenced to prison custody. The plaintiffs' counsel in *Valdivia* include the Prison Law Office and a major San Francisco law firm.

On June 13, 2002, Judge Karlton granted partial summary judgment in favor of the plaintiffs, holding that California's unitary parole revocation system violated the due process rights of the plaintiff class by unduly delaying preliminary hearings on the reliability of the probable cause determination. *See Valdivia v. Davis*, 206 F.Supp.2d 1068 (E.D.Cal.2002).

The fifth amended complaint, the operative pleading in *Valdivia*, was filed on September 13, 2002 (*see* Defendants' Request for Judicial Notice, Ex. A). The fifth amended complaint alleges that the members of the plaintiff class are being denied their right to counsel and their right to due process in connection with parole holds and revocation proceedings. Among other things, the fifth amended complaint alleges that the pay scale and criteria for attorney representation discouraged competent representation of parolees and rendered any right to counsel meaningless (*see id.*, p. 3, ¶ 6). The pleading further alleges that the BPT does not pay for reasonable and supplemental legal services such as the perfecting of administrative and judicial review (*id.*). The pleading further alleges, *inter alia*, that the BPT violates due process by denying parolees prompt revocation hearings, notice of the charges and the opportunity for reasonable investigation, meaningful representation by counsel, a meaningful opportunity to appeal a denial of counsel, the right to subpoena and present witnesses and evidence, and the right to confront adverse witnesses (*id.*, pp. 1–4, ¶¶ 2–9; pp. 18–19, ¶ 66).

7. The docket and images of certain filed documents in the *Valdivia* action are available on the court's RACER website available through the PACER interface at *www.racer.caed.uscourts.gov*.

On March 9, 2004 (approximately ten weeks before the plaintiff filed the present action), Judge Karlton caused to be filed a "Stipulated Order for Permanent Injunctive Relief" (*see* Defendants' Request for Judicial Notice, Ex. 2) ("Stipulated Order"). Among the defendants listed in the Stipulated Order are Governor Schwarzenegger, Roderick Q. Hickman, Edward S. Alameida, Jr., Carol Daly and Kenneth E. Cater, all defendants in the present action. Among other things, the Stipulated Order requires the *Valdivia* defendants to implement completely, by January 1, 2005, the following: (1) appointment of counsel for all parolees at the "return to custody" stage; (2) a probable cause hearing within a specified time; (3) standards, guidelines and training for effective assistance of state appointed counsel in the revocation process; (4) access to evidence, and the ability to subpoena and present witnesses and evidence to the same extent as the state; and (5) the imposition of limitations on the use of hearsay evidence in conformity with *United States v. Comito, supra.*

On March 17, 2004, Judge Karlton issued an "Order Granting Final Approval of Stipulated Order for Permanent Injunctive Relief," expressly finding that the proposed settlement was "fair, adequate and reasonable," and was the product of "arm's length, serious and non-collusive negotiations between experienced and knowledgeable counsel for the Plaintiff Class and the Defendants, who have actively and competently prosecuted and defended this litigation." The order further provides: "Without affecting the finality of this Order in any way, this Court hereby retains continuing jurisdiction over (a) implementation of this settlement and the Stipulated Order for Permanent Injunctive Relief; (b) hearing and determining applications for attorneys' fees, costs, interest and expenses in the Class Action; and (c) all parties hereto for the purpose of enforcing and administering the Stipulated Order for Permanent Injunctive Relief." A "Stipulation and Order Regarding Final Notice to Plaintiff Class," approving the notice to be disseminated to class members, was filed on May 26, 2004.

On June 28, 2004, Judge Karlton held a hearing concerning a possible delay in implementing the attorney appointment provisions of the Stipulated Order. On July 7, 2004, Judge Karlton issued a Joint Stipulation and Order indicating that: (1) the delay initially had been caused by the defendants' inability to obtain approval for a contract with the McGeorge School of Law Institute for Administrative Justice ("IAJ") to operate the panel of attorneys who would be appointed to represent persons accused of parole violations; (2) the defendants represented to the court and counsel that the contract had been executed and that the IAJ had made substantial progress in developing policies and procedures; and (3) the IAJ had assured the defendants and the plaintiffs' counsel that all deadlines in the Stipulated Order, "including the January 1, 2005 deadline for full attorney appointments and expedited hearings," would be met.

The BPT has repealed its regulations governing administrative appeals. *See* former 2 Cal.Code of Regs. § 2050 *et seq.* Therefore, the class notice in *Valdivia* informs class members that administrative appeals of most parole decisions no longer exist, and that parolees can "go straight to court" to challenge BPT decisions concerning, among other things, attorney appointments and parole revocations (*See* Stipulation and Order Regarding Final Notice to Plaintiff Class, filed on May 26, 2004). The BPT website also indicates that, in keeping with the *Valdivia* Stipulated Order, the BPT, through the IAJ at McGeorge, is seeking attorneys to provide, representation to parolees in revocation proceedings, and advises interested attorneys to contact the IAJ directly.

## C. *Discussion*

■ Ordinarily a litigant may assert only his own legal rights and interests, and cannot rest a claim for relief on the legal rights or interests of third parties. *See Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Coalition of Clergy, Lawyers, and Professors v. Bush,* 310 F.3d 1153, 1163 (9th Cir.2002) (citation omitted), *cert. denied,* 538 U.S. 1031, 123 S.Ct. 2073, 155 L.Ed.2d 1060 (2003). However, the prohibition against third-party standing is prudential. *Coalition of Clergy, Lawyers, and Professors v. Bush,* 310 F.3d at 1163. The Supreme Court has recognized the right of a litigant to bring an action on behalf of third parties where: (1) the plaintiff has suffered an "injury in fact" sufficient to give him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; (2) the litigant has a close relation to the third party; and (3) there exists some hindrance to the third party's ability to protect his or her own interests. *See Powers v. Ohio,* 499 U.S. 400, 410–11, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Coalition of Clergy, Lawyers, and Professors v. Bush,* 310 F.3d at 1163.

In their moving papers, the defendants assert that the plaintiff cannot satisfy the third requirement for third-party standing because the existence of the *Valdivia* action shows that California parolees were not, and are not, hindered from vindicating their rights (*see* Defendants' Memorandum in Support of Motion to Dismiss and Motion for a More Definite Statement, p. 9).

■ Individual lawsuits for injunctive and declaratory relief may not be brought if there is a class action pending involving the same subject matter. *See Crawford v. Bell,* 599 F.2d 890, 892–93 (9th Cir.1979) (district court may dismiss individual plaintiff's action where plaintiff is member of a pending class action raising the same claims); *see also McNeil v. Guthrie,* 945 F.2d 1163, 1165 (10th Cir.1991); *Gillespie v. Crawford,* 858 F.2d 1101, 1103 (5th Cir. 1988) (en banc); *Acuna v. Cambra,* 1995 WL 607543 at * 1–2 (N.D.Cal.1995), *aff'd,* 95 F.3d 1156, 1996 WL 471599 (9th Cir. 1996) (unpublished disposition). Here, California parolees have not been hindered from seeking judicial relief. They have sought and obtained judicial relief in the context of the *Valdivia* class action. The rights and interests of California parolees concerning the subject matter of the *Valdivia* class action are fully protected in that lawsuit.[8] The injunctive relief ordered in *Valdivia* action provides California parolees most, if not all, of the relief that the plaintiff seeks in the present action on their behalf. For example, the relief ordered in *Valdivia* remedies the BPT's alleged denial of competent counsel to those facing revocation hearings, the alleged improper procedures used in revocation hearings, the alleged restrictions on access to investigative funds, and the alleged use of inadmissible evidence in revocation hearings.[9] Therefore, the plaintiff lacks third-party standing to pursue claims of parolees concerning the matters covered by the *Valdivia* Stipulated Order.

8. To the extent that the plaintiff purports to assert, on behalf of California parolees, that class counsel in *Valdivia* did not or do not represent the class adequately, or that the settlement was or is unfair, nothing prevented any California parolee from raising such concerns in the *Valdivia* case, the proper forum for the resolution of such issues. The court notes that the docket in *Valdivia* is replete with communications from individual California prisoners and/or parolees to the court concerning the proposed settlement.

9. Moreover, although the parties have not briefed the issue, the BPT's decision to eliminate administrative appeals appears to moot any claim concerning the administrative appeals process.

The plaintiff argues that, despite the *Valdivia* action, the plaintiff has standing to assert the rights of "future parolees" who allegedly are not members of the *Valdivia* class. However, nothing in the *Valdivia* Stipulated Order indicates that it will not govern all future revocation proceedings. *Cf. Krug v. Lutz,* 329 F.3d 692, 696 (9th Cir.2003) (future inmates are "third-party beneficiaries" of prior consent decree governing prison authorities' exclusion of obscene publications). In light of the *Valdivia* settlement, it is unclear what claims any such future parolees would or could assert. The plaintiff lacks standing to assert such speculative claims of future parolees. *See Portman v. County of Santa Clara,* 995 F.2d 898, 903 (9th Cir.1993).

In their reply, the defendants challenge the plaintiff's standing on the different ground the plaintiff lacks a sufficiently close relationship with parolees to invoke the doctrine of third-party standing (Reply, pp. 5–6). The Supreme Court has accorded third-party standing to attorneys asserting the claims of their clients in certain circumstances. *See, e.g., United States Dep't of Labor v. Triplett,* 494 U.S. 715, 721, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) (attorneys had standing to invoke rights of black lung claimants because federal regulations limiting attorneys' fee awards in such cases allegedly deprived claimants of right to legal representation); *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 623, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (law firm had standing to challenge criminal forfeiture statute requiring clients to relinquish all assets, leaving nothing for payment of attorneys' fees); *compare Conn v. Gabbert,* 526 U.S. 286, 292–93, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (attorney lacked stand-

ing to challenge infringement of client's alleged right to have attorney available outside grand jury room while client testified). In *Tesmer v. Granholm,* 333 F.3d 683 (6th Cir.2003) (en banc), *cert. granted sub nom. Kowalski v. Tesmer,* 540 U.S. 1148, 124 S.Ct. 1144, 157 L.Ed.2d 1041 (Jan. 20, 2004), the Sixth Circuit held that attorneys who accepted appointments to represent indigent criminal defendants had third-party standing to challenge the state's refusal to provide appointed counsel for defendants who pled guilty. The United States Supreme Court granted certiorari in that case on January 20, 2004, and heard argument on October 4, 2004. The Supreme Court's decision in *Kowalski v. Tesmer* may bear upon the standing issue presented here. In light of both *Kowalski v. Tesmer* and the fact that the defendants raised this argument only in their reply, the court declines to address it at present. *See Eberle v. City of Anaheim,* 901 F.2d 814, 818 (9th Cir.1990) (court need not address an argument made for the first time in a reply); *Grupo Gigante S.A. de C.V. v. Dallo & Co., Inc.,* 119 F.Supp.2d 1083, 1103 n. 15 (C.D.Cal.2000) (same).

In the context of arguing the standing issue, the defendants assert that the *Valdivia* Stipulated Order is a final judgment entitled to preclusive effect. It is unclear from the record whether a final judgment has been entered in the *Valdivia* case which would have a preclusive effect upon the subsequent claims of class members such as the parolees whose claims the plaintiff purports to assert here. *See generally,* 18A Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure; Civil 2d, § 4443 (West 2002). In light of the disposition of the present motions, the court declines to reach this issue at present.[10]

---

10. Thus, the court need not reach the issue of the propriety of bringing "third-party standing" claims on behalf of individuals whose claims have been litigated to judgment in a prior class action. *See generally, Headwaters*

In sum, the plaintiff lacks standing to pursue third party claims ·of parolees which claims are covered by the Stipulated Order in the *Valdivia* case. The plaintiff also lacks standing to assert the speculative claims of future parolees. · The defendants' motion to dismiss the first and second causes of action is granted.

#### IV. *The Third Cause of Action Fails to Plead the Personal Involvement of All of the Individual Defendants.*

 A civil rights plaintiff may not sue any supervisor on a theory of *respondeat superior*, which is not a theory of liability cognizable under 42 U.S.C. section 1983. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1185 (9th Cir.2002), *cert. denied,* 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003). To state a civil rights claim against an individual defendant, a plaintiff must allege facts showing a defendant's "personal involvement" in the alleged constitutional deprivation or a "causal connection" between a defendant's wrongful conduct and the alleged constitutional deprivation. *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999); *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.1989). A supervisor may be held liable in his or her individual capacity "for [his or her] own culpable action or inaction in the training, supervision or control of [his or her] subordinates." *Watkins v. City of Oakland, Cal.,* 145 F.3d 1087, 1093 (9th Cir.1998) (quoting *Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir.1991)).

 In the introductory portion of his complaint, the plaintiff alleges, on information and belief, that defendants Schwarzenegger, Hickman, Perez, and Woodford "directly participated in and/or authorized or directed the acts and omissions alleged herein and/or presently [have] the power to remedy them" (*see* Complaint, pp. 8–9, ¶¶ 8, 10, 12; p. 11–12, ¶ 22). The plaintiff alleges, on information and belief, that defendants Davis, Presley, Daly and Alameida "directly participated in and/or authorized or directed the acts and omissions alleged herein and/or once had the power to remedy them" (Complaint, pp. 6–7, ¶ 9; pp. 7–8, ¶ 11; p. 9, ¶ 13; p. 12, ¶ 23). The plaintiff further alleges (not on information and belief), that defendants Farmer, Cater, Maciel, Master, Remis and Moeller, "directly participated in and/or authorized or directed the acts and omissions alleged herein and/or presently [have] the power to remedy them in whole or in part" (Complaint, pp. 9–11, ¶¶ 15, 17, 18, 19, 20, 21). These conclusory allegations are insufficient. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington,* 152 F.3d at 1194.

 The third cause of action alleges that unidentified defendants, acting individually and in concert, deprived the plaintiff of his rights under the First and Fourteenth Amendments by removing the plaintiff from the attorney appointment list in retaliation for the plaintiff's resistance to the alleged "harsh and abusive administrative machinery of parole revocation," by defaming the plaintiff, and by conducting an improper investigation of the plaintiff (Complaint, pp. 64–66, ¶¶ 110–11). The third. cause of action contains no allegations that defendants Schwarzenegger, Davis, Hickman, Presley, Perez, Daly, Farmer, Cater, Maciel, Master, Remis, Moeller, Woodford or Alameida participat-

*Inc. v. U.S. Forest Serv.,* 382 F.3d 1025, 1031 (9th Cir.2004) ("Knowingly refiling a decided action under another party name not only wastes scarce judicial resources but also shows corrosive disrespect for the finality of the decision ").

ed in, directed or approved these actions. The plaintiff's colorful argument that he proceeds against these defendants on theories of "[t]he buck stops here," and· "[t]he fish rots from the head down" (*see* Opposition to Motion to Dismiss and Motion for More Definite Statement, p. 24) suggests that he sues some of all of these defendants on a theory of vicarious liability not cognizable under section 1983. Although in his opposition the plaintiff purports to state new facts showing the personal involvement of some of the defendants, the court cannot consider these additional allegations in ruling on the sufficiency of the complaint. *See Arpin v. Santa Clara Valley Transportation Agency,* 261 F.3d at 925. Therefore, the third cause of action fails to state a section 1983 claim against defendants Schwarzenegger, Davis, Hickman, Presley, Perez, Daly, Farmer, Cater, Maciel, Master, Remis, Moeller, Woodford and Alameida.

For the reasons stated above, the defendants' motion to dismiss the third cause of action is granted.

## V. The Fifth and Eighth Causes of Action Fail to Plead That the Plaintiff Was an Employee Protected By Either California Labor Code Section 1102.5 or the Anti–Discrimination Provision of the FEHA.

In related contentions, the defendants assert that the fifth cause of action for violation of California Labor Code section 1102.5 and the eighth cause of action for

violation of the FEHA are insufficient because the plaintiff was not an "employee" covered by these statutes, but rather an independent contractor.

### A. California Labor Code Section 1102.5

The fifth cause of action alleges that the defendants subjected the plaintiff to "retaliatory employment termination" in violation of California Labor Code section 1102.5 (*see* Complaint, pp. 71–77, ¶¶ 129–40).[11] Labor Code section 1102.5(b) prohibits an employer from retaliating against an employee "for disclosing information to a government or law enforcement agency where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or violation or noncompliance with a state or federal regulation." California Labor Code section 1105 provides: "Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter." Section 1105 thus ensures the injured employee a right of action in damages against the employer. *See Lockheed Aircraft Corp. v. Superior Court,* 28 Cal.2d 481, 486, 171 P.2d 21, 25 (1946). Nothing in the statute indicates that it applies to independent contractors.

### B. FEHA

The eighth cause of action alleges two FEHA violations: (1) age discrimination in

---

**11.** The plaintiff also references California Penal Code section 6129(a)(2), which provides that employees of certain state agencies, including the BPT, who suffer retaliation for reporting improper governmental activities to a supervisor or manager may submit a complaint to the Inspector General. The statute further provides that "any state employee at any rank and file, supervisory, or managerial level found by the State Personnel Board to have intentionally engaged in ... retaliation ... shall be liable in damages ...." *See* Cal.Penal Code § 6129(d)(1). Because the plaintiff does not allege that the State Personnel Board found any defendant to have committed intentional violation, a prerequisite for a claim for damages under Penal Code section 6129, the court construes the fifth cause of action to state a claim for violation of Labor Code section 1102.5 only, a construction consistent with the plaintiff's description of this claim in his opposition (*see* Opposition to Motion to Dismiss and Motion for More Definite Statement, pp. 36–37, n. 25).

violation of California Government Code section 12940(a); and (2) harassment on the basis of age pursuant to California Government Code section 12940(j)(1).[12] Section 12940(a) makes it an unlawful employment practice for an employer, because of the age of any person aged 40 and older, "to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions and privileges of employment." Section 12940(j)(1) makes it an unlawful employment practice for an employer or any other person to harass an employee, an applicant, or a person providing services pursuant to a contract on account of race, religious creed, color, national origin, ancestry, physical or mental disability, medical condition, marital status, sex, age, or sexual orientation. Cal. Gov't Code § 12940(j)(1).

■■■ Although the reach of Government Code section 12940(a) is not limited to "employees," but rather extends to "persons" such as applicants, *see* Cal. Gov't Code § 12940(a)(1), in order to pursue a claim for discriminatory discharge in violation of section 12940(a), the plaintiff must show a discharge "from employment," and hence must have been an employee prior to the discharge. *See id.; see also Shephard v. Loyola Marymount Univ.*, 102 Cal.App.4th 837, 842–47, 125 Cal.Rptr.2d 829, 832–36 (2002) (student athlete not employee of university for purposes of FEHA). The anti-discrimination provisions of Government Code section 12940(a) do not cover independent contractors. *See Sistare–Meyer v. Young Men's Christian Ass'n of Metropolitan Los Angeles*, 58 Cal.

App.4th 10, 17, 67 Cal.Rptr.2d 840, 844 (1997); *Braun v. County of San Mateo*, 2001 WL 1042140, at * 7 (N.D.Cal.2001) (same), *aff'd*, 48 Fed.Appx. 244, 2002 WL 31217267 (9th Cir.2002) (unpublished disposition); *Lumia v. Roper Pump Co.*, 724 F.Supp. 694, 697–98 (N.D.Cal.1989) (same); 2 Cal.Code of Regs. § 7286.5(b)(1).

### C. Discussion

■■■ In support of their argument that the plaintiff was an independent contractor not covered by these statutes, the defendants seek judicial notice of the plaintiff's "Application for Attorney Appointment Roster" and the "Attorney Packet" attached thereto (Defendants' Request for Judicial Notice, Ex. 3). The defendants' attorney has submitted a declaration attesting that these documents were received from the BPT attorney scheduler and that the signature "appears to match" the plaintiff's signature on the complaint (*see* Declaration of John E. Rittmayer, ¶ 2). The plaintiff has not filed any objection to the request for judicial notice. However, even assuming *arguendo* that the documents are properly authenticated, the plaintiff's application for appointment is not the sort of document as to which judicial notice is appropriate under Rule 201 of the Federal Rules of Evidence, but rather constitutes evidentiary matter which it is inappropriate to consider on a motion to dismiss. Therefore, the court will not take judicial notice of these documents.

■■■ The court can quickly dispose of the defendants' assertion that the plaintiff lacks standing to pursue an FEHA harassment claim. Even assuming the plaintiff was an independent contractor rather than an employee, the FEHA's anti-harassment

---

12. "Age" refers to the age of a person who has reached his or her fortieth birthday. Cal. Gov't Code § 19226(b).

provision protects "a person providing services pursuant to a contract." *See* Cal. Gov't Code § 12940(j)(1).

With respect to the plaintiff's claims under California Labor Code section 1102.5 and California Government Code section 12940(a), the plaintiff alleges that he was a part-time BPT employee, not an independent contractor. In *Briggs v. Lawrence,* 230 Cal.App.3d 605, 618, 281 Cal.Rptr. 578, 586 (1991), the court held that a salaried full-time public defender engaged in representing an assigned client was a state employee for purposes of the California Tort Claims Act. The court rejected an analogy to an attorney appointed from a panel, noting that, among other things, public defenders worked full-time for the county, the county provided them with office space and clerical support, and the county paid them salaries and provided benefits. *Id.* at 616–17, 281 Cal.Rptr. at 585. In *Foster v. County of San Luis Obispo,* 14 Cal. App.4th 668, 17 Cal.Rptr.2d 730 (1993), the court held that an attorney hired by a law firm to provide services to indigent criminal defendants pursuant to the law firm's contract with the state was an independent contractor, not a state employee. *Cf. also Thomas v. Held,* 941 F.Supp. 444, 450–51 (S.D.N.Y.1996) (attorney denied recertification to criminal court's indigent attorney panel could not recover under federal age discrimination statute; attorney was an independent contractor, not an employee within the statute).

▮ The plaintiff's allegations that he was an attorney whom the BPT chose to place upon its attorney appointment list

for assignment to represent indigent parolee clients do not suffice, without more, to show that the plaintiff was an employee rather than an independent contractor. *See generally, S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,* 48 Cal.3d 341, 349–55, 256 Cal.Rptr. 543, 769 P.2d 399 (1989) (setting forth analysis for determining whether worker is an employee or an independent contractor). The plaintiff allegedly was not salaried, but was paid on an hourly basis (*see* Complaint, p. 5, § 4(b)). The plaintiff apparently enjoyed an outside law practice unregulated by the BPT. The plaintiff does not allege that the BPT exercised any control over the content of the plaintiff's representation to parolee clients or over the plaintiff's outside law practice, or that the BPT provided the plaintiff with such accouterments of employment as office space, clerical help, or benefits. Although the plaintiff alleges new facts in his opposition to show he was a BPT employee, as indicated above the court will not consider such new allegations in determining the sufficiency of the pleading. On its face, the complaint contains insufficient facts to show that the plaintiff was an employee covered by California Labor Code section 1102.5 or by California Government Code section 12940(a).[13] Therefore, the defendants' motion to dismiss the fifth and eighth causes of action is granted.

## VI. *The Defendants' Immunity Argument Lacks Merit.*

The defendants' remaining attack on the fifth cause of action is without merit. In a

---

13. The plaintiff also contends that, in the event that the court holds that California Labor Code section 1102.5 does not cover independent contractors, the court should hold that, as a matter of California law, independent contractors are entitled to the "exact same protections against retaliatory termination as if they were employees" (Opposition to Motion to Dismiss and Motion for More

Definite Statement, pp. 40–41 & n. 26). The plaintiff provides no authority for this proposition. In any event, the court need not address this issue, because the plaintiff expressly construes his own pleading not to contain any nonstatutory wrongful discharge claim (*see* Opposition to Motion to Dismiss and Motion for More Definite Statement, pp. 36–37, n. 25).

confused argument, the defendants appear to contend that the defendants are immune from liability for a violation of California Labor Code section 1102.5 under a provision of the California Tort Claims Act, California Government Code section 815(a), which provides that a "public entity" is not liable for an injury "[e]xcept as otherwise provided by statute" (*see* Defendants' Memorandum, p. 11). The Tort Claims Act "establishes the basic rules that public entities are immune from liability except as provided by statute (§ 815, subd. (a)), that public employees are liable for their torts except as otherwise provided by statute (§ 820, subd. (a)), that public entities are vicariously liable for the torts of their employees (§ 815.2, (subd.(a)), and that public entities are immune where their employees are immune, except as otherwise provided by statute (§ 815.2, subd. (b))." *Caldwell v. Montoya*, 10 Cal.4th 972, 980, 42 Cal.Rptr.2d 842, 846, 897 P.2d 1320 (1995) (original emphasis).

The defendants rely upon *Caldwell v. Montoya, supra,* which held that the discretionary act immunity conferred upon public *employees* by California Government Code section 820.2 is not abrogated by a statute which "simply imposes a general duty or liability on persons, including public employees." *Id.* at 986, 42 Cal. Rptr.2d at 851, 897 P.2d 1320. The defendants appear to argue that California Labor Code section 1102.5 does not abrogate the immunity conferred by Government Code section 815(a).[14] The defendants argue that *Caldwell's* reasoning applies here because California Government Code section 815(a) (conferring immunity upon pub-

lic entities) contains the same language ("[e]xcept as otherwise provided by statute") as California Government Code section 820.2 (conferring immunity upon public employees).

■ This argument lacks merit. The plaintiff has not sued any "public entity" within the meaning of California Government Code section 815(a). Because the plaintiff sues only *individual* state employees (public employees) in their *individual* capacities, section 815(a) is inapplicable. As indicated above, under the California Tort Claims Act, public employees *are* liable for their torts except as otherwise provided by statute. *See* Cal. Gov't Code § 820(a). The defendants do not argue that the individual defendants are shielded from liability for violations of California Labor Code section 1102.5 by any other immunity statute.

## VII. *The Sixth Cause of Action Fails to State a Claim for Defamation.*

The plaintiff's defamation claim appears to be based upon a statement that a female parole agent, defendant Murria, made to unidentified BPT officials to the effect that the plaintiff had acted towards her in an inappropriate manner during a break at a hearing at which Murria had testified. The plaintiff alleges that unidentified "Defendant personnel" defamed the plaintiff by removing him from the attorney appointment list and by "spuriously leveling a false and defamatory charge against [the plaintiff] of inappropriate comportment towards a female parole agent [defendant Murria], following a parole revocation

---

14. *But see* Cal. Labor Code § 1106 (providing that, for purposes of section 1102.5, "employee" includes, among others, a State employee). The California Legislature enacted Cal. Labor Code section 1106 in 1992 in order to "conform[ ] the rights of state and local government employees to those of private sector employees ...." *See* Committee Report for 1991 California Assembly Bill No. 3486, *1991–92 Regular Session, April 8, 1992; see also* Committee Report for 1991 California Assembly Bill No. 3486, 1991–92 Regular Session, June 10, 1992 ("This bill defines employees in the anti-retaliation law that applies to private sector workers to specifically include state and local governmental employees.").

hearing on May 21, 2003" (Complaint, p. 79, ¶ 144). The plaintiff apparently alleges that BPT officials, including defendants Wadkins, Moeller, and Speed, conducted an investigation of Murria's allegation, during the course of which the plaintiff speculated to Moeller that Murria may have complained about the plaintiff because the plaintiff "had vigorously cross-examined her skeptically during the hearing" (Complaint, pp. 79–80, ¶¶ 145(a)-(d)). Defendant Moeller allegedly described Murria's statement to the plaintiff in a telephone conversation, and defendant Speed described the statement in a letter apparently sent to the plaintiff (Complaint, pp. 80–82, ¶¶ 145(b)—147). The plaintiff further alleges that, on August 27, 2003, a colleague of the plaintiff told the plaintiff that the colleague had heard that the plaintiff "had engaged in a worse form of inappropriate comportment" than that alleged by Murria (Complaint, p. 83, ¶ 150). The plaintiff attributes his colleague's knowledge of Murria's complaint "to the improper, non-confidential manner in which Defendant BPT personnel processed [Murria's] (apparent) complaint" (Complaint, p. 83, ¶ 152).

█ In ruling on the sufficiency of this state law claim, the court applies federal law pleading standards, although the standard for dismissal in state court "is highly relevant." *Church of Scientology of Calif. v. Flynn,* 744 F.2d 694, 696 n. 2 (9th Cir.1984).

█ The defendants contend that the plaintiff's defamation claim is insufficient because the plaintiff fails to plead the defamatory statement. Under California law, although a plaintiff need not plead the allegedly defamatory statement verbatim, the allegedly defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. *See Okun v. Superior Court,* 29 Cal.3d 442, 458, 175 Cal.Rptr. 157, 629 P.2d 1369

(1981) (citations omitted), *cert. denied,* 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641 (1981); *Kahn v. Bower,* 232 Cal.App.3d 1599, 1612 n. 5, 284 Cal.Rptr. 244, 252 (1991); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F.Supp. 1303, 1314 (N.D.Cal.1997). Even under liberal federal pleading standards, "general allegations of the defamatory statements" which do not identify the substance of what was said are insufficient. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F.Supp. at 1314; *see also Bloomquist v. Albee,* 2004 WL 2203469, at * 5–6 (D.Me.2004) (federal notice pleading standards not satisfied where plaintiff's 79 page complaint failed to plead the particular statements comprising alleged slander); *Chabra v. Southern Monterey County Memorial Hospital, Inc.,* 1994 WL 564566, at * 7 (N.D.Cal. 1994) (dismissing defamation claim which alleged, on information and belief, that defendants defamed plaintiff by publishing unidentified false statements about him). Here, because the plaintiff fails to identify and state the substance of the allegedly defamatory statement, the defamation claim is insufficient.

The plaintiff argues that he should not be required to plead the alleged defamatory statement. The plaintiff confides that he "wrote his Complaint with an eye towards preserving a hospitable climate for settlement," and argues that "re-publication" of the alleged defamatory statement in a pleading will "undermine whatever climate might otherwise develop for negotiation and possible settlement of this action at a comparatively early stage" (Plaintiff's Opposition re Defamation and Invasion of Privacy Causes of Action, p. 2). The plaintiff indicates that he has informed the defendants' counsel of the location of the alleged defamatory statement, and has "no doubt" that counsel is aware of its contents (*id.* at pp. 2–3). The

plaintiff offers to file the alleged defamatory statement under seal (*id.* at p. 3).

■■■ While the plaintiff's professed receptivity to settlement may be laudable, lawsuits cannot be filed in secret in order to create a hospitable climate for settlement. The public enjoys a common law right of access to judicial proceedings. *See Nixon v. Warner Communications,* 435 U.S. 589, 598–99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). "Litigation is a public exercise; it consumes public resources. It follows that in all but the most extraordinary cases—perhaps those involving weighty matters of national security—complaints must be public." *Levenstein v. Salafsky,* 164 F.3d 345, 348 (7th Cir.1998). The plaintiff cites no authority for the proposition that a plaintiff suing for defamation may allege the defamatory statement under seal, for the purpose of fostering settlement or otherwise. The plaintiff's request to file under seal the allegedly defamatory statement, which the plaintiff in any event alleged to be false, is denied.

■■■ The defendants further argue that the defamation claim is defective because the plaintiff has failed to allege facts showing the absence of a privilege (Defendants' Memorandum, p. 16). Under California Law, privilege is an affirmative defense. *See Beroiz v. Wahl,* 84 Cal.App.4th 485, 492, 100 Cal.Rptr.2d 905, 909 (2000). However, a plaintiff must allege facts showing an absence of privilege where the complaint on its face shows that the allegedly defamatory statement was privileged. *See Whelan v. Wolford,* 164 Cal.App.2d 689, 693, 331 P.2d 86, 88–89 (1958); *Harnish v. Smith,* 138 Cal.App.2d 307, 310, 291 P.2d 532, 534 (1956).

■■■ Federal pleading rules generally do not require a plaintiff to anticipate and plead around an affirmative defense. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *United States v. Northern Trust Co.,* 372 F.3d 886, 888 (7th Cir.2004). Moreover, the defendants do not identify any privilege which is evident from the face of the complaint.[15] The court will not deem the defamation claim insufficient for failure to identify and plead around some privilege not identified by the defendants. The defendants' assertion that the plaintiff's allegations of malice are insufficient is also without merit. Malice may be pleaded generally. *See* Rule 9(b), Federal Rules of Civil Procedure; *see also Mullins v. Brando,* 13 Cal. App.3d 409, 420–22, 91.Cal.Rptr. 796, 803–04 (1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2231, 29 L.Ed.2d 701 (1971).[16]

For the reasons stated above, the defendants' motion to dismiss the sixth cause of action is granted.

**VIII.** *The Plaintiff's Failure to Plead the Source of the Right Asserted in His Invasion of Privacy Claim Does Not Render the Claim Insufficient Under Federal Pleading Standards.*

The defendants allege that the plaintiff's seventh cause of action for invasion of privacy is vague and ambiguous because it fails to identify the source of the plaintiff's alleged privacy rights (Defendants' Memorandum in Support of Motion to Dismiss

---

**15.** *But see* Cal. Civil Code § 47(b); *Hagberg v. Calif. Federal Bank FSB,* 32 Cal.4th 350, 362–64, 7 Cal.Rptr.3d 803, 810–12, 81 P.3d 244 (2004); *Wise v. Thrifty Payless, Inc.,* 83 Cal. App.4th 1296, 1303, 100 Cal.Rptr.2d 437, 442 (2000).

**16.** However, the plaintiff's allegations that several defendants communicated the allegedly defamatory statement to the *plaintiff* does not show actionable defamation. *See Rosenaur v. Scherer,* 88 Cal.App.4th 260, 278, 105 Cal.Rptr.2d 674, 687 (2001); *see also Shively v. Bozanich,* 31 Cal.4th 1230, 1247, 7 Cal. Rptr.3d 576, 587, 80 P.3d 676 (2003).

and Motion for a More Definite Statement, pp. 16–17). Although the complaint does not indicate the basis for the plaintiff's privacy claim, in his opposition the plaintiff clarifies that he intends to assert: (1) an invasion of privacy claim pursuant to the California Constitution, Article 1, section 1; and (2) a violation of the California Information Practices Act, Cal. Civil Code § 1798 *et seq.*[17]

■ The defendants do not argue that the complaint fails to allege an invasion of privacy claim, but only that it fails to identify a legal theory. However, "[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." *Sagana v. Tenorio,* 384 F.3d 731, 736–37 (9th Cir.2004) (citations and internal quotations omitted); *see Fontana v. Haskin,* 262 F.3d 871, 876–77 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief."; citation omitted); *Porten v. Univ. of San Francisco,* 64 Cal. App.3d 825, 833, 134 Cal.Rptr. 839, 844 (1976) (claim entitled "breach of confidential relationship" stated claim for invasion of privacy under California Constitution; "Mistaken labels and confusion of legal theory are not fatal; if appellant's complaint state a cause of action on any theo-

ry, he is entitled to introduce evidence thereon."). Therefore the defendants' argument lacks merit.[18]

For the reasons stated above, the defendants' motion to dismiss the seventh cause of action is denied.

## X. *The Eighth Cause of Action Is Insufficient.*

As indicated in section V, above, the eighth cause of action fails to plead that the plaintiff was an employee covered by the FEHA. The defendants further assert that the plaintiff's FEHA claims for age discrimination and harassment contained in the eighth cause of action are insufficient because: (1) the plaintiff has failed to plead an essential element of the prima facie case, *i.e.,* that the BPT replaced him with a younger person; and (2) the plaintiff asserts a claim "only under a theory of discrimination, not harassment" (Defendants' Memorandum in Support of Motion to Dismiss and Motion for a More Definite Statement, pp. 18–20).

With respect to the defendants' first assertion, even assuming that an allegation that the plaintiff was replaced with a younger person is an element of an FEHA age discrimination claim which must be pleaded in state court,[19] as indicated above, state pleading standards do not apply in federal court. In federal court, the evi-

---

17. California Civil Code section 1798.53 provides a remedy against any person, other than an employee of a state or local agency acting in his or her official capacity, who intentionally discloses information, not otherwise public, which that person knows or reasonably should know was obtained from personal information maintained by a state agency or upon certain "records" as defined by the Federal Privacy Act, 5 U.S.C. section 552a. The plaintiff apparently does not mean to allege a violation of any common law right of privacy.

18. Because the defendants do not argue the point, the court expresses no opinion on the sufficiency of the complaint to allege either a

constitutional or a statutory invasion of privacy claim.

19. *But see Begnal v. Canfield & Associates, Inc.,* 78 Cal.App.4th 66, 76–77, 92 Cal.Rptr.2d 611, 618 (2000) (evidence that employee was replaced with an older person did not conclusively preclude an inference of age discrimination); *see also Heard v. Lockheed Missiles & Space Co.,* 44 Cal.App.4th 1735, 1755, 52 Cal. Rptr.2d 620, 632 (1996) ("Although proof regarding similarly situated employees outside the protected class may be one way of raising an inference of intentional discrimination, it *is not the only way.*") (original emphasis).

dentiary requirements for establishing a prima facie case of discrimination do not govern the standard of. pleading. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "Thus, complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a) [of the Federal Rules of Civil Procedure]." *Id.* at 513–14, 122 S.Ct. 992 (footnote omitted) (deeming sufficient a complaint which alleged the events leading to plaintiff's termination, the relevant dates, and the ages and nationalities "of at least some of the relevant persons involved with his termination"). Therefore, the alleged failure to plead an element of a "prima facie case" does not, standing alone, warrant dismissal.

However, the plaintiff's age discrimination claim contained in the eighth cause of action is rambling and unclear. The plaintiff incorporates all of the allegations of the prior claims for relief (*see* Complaint, p. 88, ¶ 167). The plaintiff alleges that, following his appointment to the attorney assignment list at the age of 44, the plaintiff was "unjustly harassed and discriminated against because of his age and the attributes thereof and removed from the attorney appointment list at age 49" (*id.*, p. 88, ¶ 169). However, the plaintiff also alleges that BPT personnel removed the plaintiff from the attorney appointment list in retaliation for the plaintiff's resistance to BPT parole revocation procedures, which appears to be a retaliation claim, not an age discrimination claim (*id.*, p. 89, ¶ 172). The plaintiff also alleges that, after the plaintiff missed an appointment on August 20, 2003, defendant Wadkins made the plaintiff write an explanatory letter which Wadkins then forwarded to BPT officials in Sacramento, and that defendant Farmer thereafter wrote to the plaintiff informing the plaintiff of his removal from the attorney appointment list (*id.*, pp. 91–92, ¶¶ 179–184). It is not clear what these allegations have to do with age discrimina-

tion. Therefore, the eighth cause of action fails to satisfy the "short and plain" statement requirement of Rule 8 of the Federal Rules of Civil Procedure.

The defendants' second assertion that the plaintiff's claim asserts only discrimination, not harassment, has merit. In *Reno v. Baird*, 18 Cal.4th 640, 76 Cal. Rptr.2d 499, 957 P.2d 1333 (1998), the California Supreme Court held that a worker may not sue individual supervisors for discrimination in violation of California Government Code section 12940(a). The Court recognized, however, that the FEHA authorizes harassment claims against individual supervisors "or any other person." *See Reno v. Baird*, 18 Cal.4th at 644–45, 76 Cal.Rptr.2d at 501, 957 P.2d 1333 (citing former Cal. Gov't Code § 12940(h)(1), now Cal. Gov't Code § 12940(j)(1)). In differentiating a discrimination claim from a harassment claim, the Court approved the analysis set forth in *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 53 Cal.Rptr.2d 741 (1996). *See Reno v. Baird*, 18 Cal.4th at 643, 76 Cal.Rptr.2d at 500, 957 P.2d 1333. In *Janken*, the court distinguished between discrimination claims (which must be brought against the employer) and harassment claims (which may be brought against individual supervisors), holding that "commonly necessary personnel management decisions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." *Janken v. GM Hughes Electronics*, 46 Cal.App.4th at 64–65, 53 Cal.Rptr.2d at 746. "These are actions of a type necessary to carry out the duties of business and personnel management." *Id.*

"Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." *Id.; see Reno v. Baird,* 18 Cal.4th at 646–47, 76 Cal.Rptr.2d at 502–03, 957 P.2d 1333 (quoting above passages).

■ Here, the defendants correctly assert that, under these standards, the plaintiff pleads only section 12940(a) discrimination, not harassment. The eighth cause of action alleges no express instances of harassment other than the BPT's alleged requirement that the plaintiff write an explanatory letter to defendant Wadkins after the plaintiff missed an appointment, Wadkins' alleged threat to remove the plaintiff from the attorney appointment list because of the missed appointment, and the plaintiff's subsequent removal from the attorney appointment list (*see* Complaint, pp. 89–92, ¶¶ 172–184). Under *Reno v. Baird,* these are allegations of discriminatory discharge, not harassment.[20] *See Jelincic v. Xerox Corp.,* 2004 WL 2217643, at * 2 (N.D.Cal.2004).

The defendants do not expressly challenge the plaintiff's discrimination claim on the ground that the plaintiff may only bring a section 12940(a) claim against an employer, not an individual supervisor or co-worker. However, the plaintiff appears to understand that this is the import of *Reno v. Baird.* The plaintiff urges that "rote application" of the holding of *Reno v. Baird* will work "an unjust and anomalous result" because: (1) *Reno v. Baird* "immunizes" the individual defendants from lia-

bility for discrimination; and (2) the Eleventh Amendment prevents the plaintiff from suing the BPT, the plaintiff's putative "employer," in federal court (*see* Opposition to Motion to Dismiss and Motion for a More Definite Statement, pp. 47–48).[21] According to the plaintiff, application of *Reno v. Baird* in the present context will require "state employee victims [either] to forfeit valid claims of employment discrimination or file them in state court, thereby foregoing [sic] the preferred neutral forum provided by the Federal Court where the perpetrators are state employees and federal questions are concomitantly raised" (Opposition to Motion to Dismiss and Motion for a More Definite Statement, p. 48).

■ Regardless of the plaintiff's disagreement with *Reno v. Baird,* this court is bound by the California Supreme Court's interpretation of a California statute. *See Mangold v. Cal. Pub. Util. Comm'n,* 67 F.3d 1470, 1478 (9th Cir.1995) ("The *Erie*[22] principles apply equally in the context of [supplemental] jurisdiction."; citations omitted); *see also Vestar Devel. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) ("When interpreting state law, federal courts are bound by decisions of the state's highest court"; citation omitted). Moreover, in *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 97 L.Ed.2d 67 (1984), the United States Supreme Court rejected the argument that the Eleventh Amendment should not apply to pendent state claims because it would

**20.** It is unclear whether the plaintiff asserts a retaliation claim under California Government Code section 12940(h).

**21.** "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State*

*School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *see also Freeman v. Oakland Unified Sch. Dist.,* 179 F.3d 846 (9th Cir.1999) (Eleventh Amendment barred FEHA claim against state agency).

**22.** *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

have a "disruptive effect" on litigation against state officials by causing litigants to "split causes of action between state and federal courts." *Id.* at 121–23, 104 S.Ct. 900. The Court reasoned that "such considerations of policy cannot override the constitutional limitations on the authority of the federal judiciary to adjudicate suits against a State." *Id.* at 123, 104 S.Ct. 900 (citation and footnote omitted).

In sum, under *Reno v. Baird*, the plaintiff has not stated a claim for harassment on the basis of age against the individual defendants, and the plaintiff may not assert a section 12940(a) discrimination claim against the individual defendants.

For the reasons stated above, the defendants' motion to dismiss the eighth cause of action is granted.

## CONCLUSION

The defendants' motion to dismiss the complaint is granted in part and denied in part. The motion to strike and the motion for a more definite statement are denied as moot.

A complaint filed *pro se* may not be dismissed without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Karim–Panahi v. Los Angeles Police Department*, 839 F.2d 621, 623 (9th Cir.1988) (citations and quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (dismissal with prejudice inappropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief"); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (en banc) (district court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts"; citation and internal quotations omitted).

The plaintiff is granted leave to file a first amended complaint on or before December 30, 2004. Any first amended complaint must be full and complete in and of itself, without reference to any other previously filed document. The plaintiff may not add defendants without leave of court. *See* Rule 21, Federal Rules of Civil Procedure.

Alternatively, in lieu of filing a first amended complaint in conformity with this Memorandum and Order, the plaintiff may file a "Notice of Intent Not to File a First Amended Complaint" on or before December 30, 2004. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1064–65 (9th Cir.2004). In the event that the plaintiff elects to file a "Notice of Intent Not to File a First Amended Complaint" rather than a first amended complaint, the court will dismiss the action, thereby affording the plaintiff the opportunity to appeal if he so desires.

The plaintiff is advised that, in the event that the plaintiff fails to file either a first amended complaint or a "Notice of Intent Not to File a First Amended Complaint" with the court on or before December 30, 2004, the court may recommend that the action be dismissed for failure to obey a court order and/or failure to prosecute. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 629–33, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Pagtalunan v. Galaza*, 291 F.3d 639, 642–43 (9th Cir.2002) (action may be dismissed for failure to obey court order), *cert. denied*, 538 U.S. 909, 123 S.Ct. 1481, 155 L.Ed.2d 230 (2003); *Bautista v. Los Angeles County*, 216 F.3d at 841 (9th Cir. 2000) (same).